# Richmond.

GRASTY v. LINDSAY.

November 21, 1907.

Absent, Cardwell, J.

1. INSTRUCTIONS—*Evidence to Support.*—An instruction is properly refused when predicated on the existence of a fact denied by the testimony of the party offering the instruction.

2. CONTRACTS—*Right Reserved to Terminate—Failure to Exercise—False Representations—Burden of Proof—Case at Bar.*—Plaintiff contracted to bore a well for the defendant at a stated price per foot, the defendant reserving to himself the absolute right to stop the work at any time he saw fit, upon payment of the contract price for work done. After a depth of five hundred feet had been reached, for which payment was subsequently made, defendant claims that the plaintiff falsely represented to him that he had reached flat rock, and that but for such representation the defendant would have stopped the work, but the boring was allowed to proceed one hundred and thirty feet deeper, for the price of which this action was brought. The trial court instructed the jury that, if the defendant claims that he would have exercised his right and stopped the work, but for the representation made to him by the plaintiff, the burden is on the defendant to prove, by a preponderance of the evidence, to the satisfaction of the jury that such representation was, as a matter of fact, untrue, and that the defendant relied upon and was misled by such representation. There was a verdict for the plaintiff for the amount of his claim, and this verdict and the instruction of the trial court are approved by this court.

Error to a judgment of the Circuit Court of Augusta county, in an action of *assumpsit.* Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Fitzhugh Elder,* for the plaintiff in error.

*Timberlake & Nelson,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

This was an action in assumpsit brought in the circuit court of Augusta county by Samuel Lindsay against Thomas P. Grasty, to recover the sum of $325. The defendant pleaded *non assumpsit,* and a jury being empaneled found a verdict in favor of the plaintiff for $325, to which a writ of error was allowed by one of the judges of this court.

Lindsay and Grasty entered into a written contract on the 28th day of April, 1905, by which Lindsay undertook to bore a well on the premises of Grasty. So much of the contract as is material to the issue before us is as follows: " * * * the said Lindsay agrees to begin the work at once and to carry it on continuously to completion and to the production of a satisfactory flow of water, unless the work shall be stopped by the party of the first part; the party of the first part agrees to pay for said work at the rate of $2.50 per foot in cash upon the completion of the work, whether the same shall be stopped by the party of the first part or shall be continued to completion, and agrees to pay the amount above stipulated in cash upon the completion of the work."

After the well had been bored to a depth of nearly 500 feet, at a cost of $1,250, all of which has been paid, Grasty began to doubt whether or not a supply of water could be obtained at that point. He thereupon consulted Charles Catlett, a geologist of repute, who advised him, after an inspection of the premises, that the inclination of the limestone rock at that point was such as to render it exceedingly improbable that water would be found. Grasty went then to Lindsay and had some conversation with him upon the subject, informed him of his fears and of the opinion of Mr. Catlett, and said to him that he did not

care to go beyond the 500 feet. Lindsay continued to bore, and informed Grasty that, in his opinion, they had gotten through the inclined strata of rock, and had reached flat rock. Grasty, it seems, was doubtful whether or not this conclusion was correct, and so expressed himself, according to his testimony, to Lindsay, who replied to him: "I know that the drill is now in flat rock."

Grasty, in his cross-examination, in reply to the question, "Did you ever, at any time, exercise your right, under the contract, and stop Lindsay from the work?" replied: "No, I cannot say that I stopped him; he came and said, 'Mr. Grasty, I have another job over in Albemarle;' and I said, 'You had better take it.' I was willing for him to resume drilling on his return if he could prove to me definitely that he was in flat rock." And further, in the course of his examination, the defendant testified that the plaintiff never did, at any time, in express terms, agree that the boring of the well beyond the depth of 500 feet was to be at the risk and cost of plaintiff and without charge in the event the rock beyond that depth could not be shown to be flat or horizontal to defendant's satisfaction; but that this was the inference drawn by defendant from the statement of plaintiff that he had struck flat rock, and that he was willing to risk his reputation as a well-digger upon it. Defendant further testified on cross-examination that "his position in this case is just this: that he expected the plaintiff to stop when he reached a depth of 500 feet; that he did not stop plaintiff at the depth of 500 feet, because at or about the time the well reached that depth, plaintiff told him that he had struck flat rock; that, relying upon this representation, which he now believes to have been untrue, he forebore to stop plaintiff, and allowed him to continue; that, but for such representation by the plaintiff, he would have stopped him, as he had the right to do under his contract, at the depth of 500 feet."

The plaintiff testified, that the point at which he began boring was designated by the defendant; that the first stratum

of limestone rock which he encountered was slanting; that this was readily determined by the way the bit struck upon it; that there is no difficulty whatever in telling how rock lies—whether flat or slanting at an angle—as the bit used in boring is constantly turned and the edge only bites into the rock when it is first encountered, and it is only when the hole has gotten a good start that it begins to strike squarely; that Mr. Grasty was present frequently during the drilling operations, and asked a great many questions, which he, the plaintiff, always answered gladly; that the well was frequently tested from time to time in the presence of the defendant; that when he, the plaintiff, had bored through two strata of rock, he got a supply of water which he thought would probably be sufficient; that the well was tested with a pump, and the defendant said that he desired more water and wanted the well drilled deeper; that the depth of the well at this time was nearly five hundred feet; that the drilling was accordingly continued into the next or third stratum of limestone rock; that when this last stratum of rock was encountered, the bit struck it squarely all around, thus indicating that the rock presented a flat surface at the point of the bit; that he told Mr. Grasty that the bit had struck flat rock; that it was, of course, impossible for him or anyone else, to tell the extent of the flat rock, or to tell anything about its slope except at the point of the bit; that when the well reached a depth of 630 feet, or about that time, he, the plaintiff, received a letter from a gentleman in Albemarle—a Mr. Patterson—requesting him to drill a well for him at his place near Charlottesville; that plaintiff told defendant of Mr. Patterson's request, and asked defendant if he would allow him to move his machinery to Albemarle and bore this well for Mr. Patterson, and then return and complete defendant's well; that defendant said that he would permit plaintiff to do this, provided he would return as soon as possible and complete his well; that plaintiff thereupon went to Albemarle and bored Mr. Patterson's well, and when he returned he notified de-

fendant that he was ready to complete the work on his well; that defendant said that he had installed a gasoline engine and pump and wanted to test the supply of water already obtained before he had any more work done; that some time after this, the defendant having paid only $1,000, plaintiff asked him to pay the balance; that defendant stated that he had no money on hand, but would give a note for $250, which he would pay in a short time; that plaintiff agreed to this, and the note was taken and discounted, and was paid when it fell due; that up to this time, plaintiff had never heard one word from the defendant as to any dispute about 'the well or the amount due, or any claim on the part of the defendant, that he, the plaintiff, had made any untrue statement or representations as to the character of the rock in which he had bored; that the first intimation he had of any trouble was when the note was given; that the note was not given or accepted in full payment of the balance due on account of the well; that the amount paid him was $1,250, which was paid in three payments; that the balance due is $325; and that he tried repeatedly to get defendant to pay this balance, but defendant refused to do so, saying that he would pay it when it was proven to him that the last stratum of rock was flat.

Upon this evidence, defendant asked the court to give the following instruction: "The court instructs the jury, that if they believe from the evidence that the defendant, Thomas P. Grasty, instructed the plaintiff, Samuel Lindsay, to stop boring the well on the Grasty premises after a depth of five hundred feet had been reached, as he had a right to do under the contract relating to the boring of said well, and that said five hundred feet of well had been paid for, and that the boring after said depth of five hundred feet had been reached, was upon the guarantee by the said plaintiff, Lindsay, to the defendant, Grasty, that he, the said Lindsay, was then boring in a horizontal or flat strata of rock, then they must find for the defendant, unless they further believe from the evidence that

said Lindsay, as a matter of fact, after said five hundred feet had been reached, was actually boring in a horizontal or flat strata of rock."

This instruction was rejected by the court. It could not have done otherwise. It is predicated upon the fact that Thomas P. Grasty instructed the plaintiff to stop boring after a depth of five hundred feet had been reached, in the face of Grasty's own testimony that he had never directed Lindsay to stop the work.

The court gave to the jury the following instruction: "The court instructs the jury that, under the contract between the plaintiff and the defendant in issue in this case, the defendant had the absolute right to stop the plaintiff from boring the well at any time he saw fit to do so. And if the defendant claims that he would have exercised this right and stopped the plaintiff, but for a representation made to him by the plaintiff, the burden is on the defendant to prove, by a preponderance of evidence to the satisfaction of the jury, that such representation was, as a matter of fact, untrue, and that the defendant relied upon and was misled by such representation. Unless the defendant has proven both of these facts by a preponderance of evidence, to the satisfaction of the jury, the jury must find a verdict in favor of the plaintiff."

We think there was no error in this instruction. Plaintiff in error complains that the instruction is grossly misleading and erroneous, first, because it imputed to the defendant a theory of defense which he never entertained, and which there is no evidence to support; and, second, because it instructs the jury erroneously upon such theoretical defense.

That there is evidence to support it appears from the testimony of the defendant himself, as follows: "He did not stop plaintiff at the depth of five hundred feet, because at or about the time the well reached that depth, plaintiff told him that he had struck flat rock; that, relying upon this representation, which he now believes to have been untrue, he forebore to stop plaintiff, and allowed him to continue; that, but for such

representation by the plaintiff, he would have stopped him, as he had the right to do under his contract, at the depth of five hundred feet."

Upon this evidence, and guided by this instruction, the jury found a verdict for the plaintiff for the sum of $325, upon which the circuit court entered judgment.

We find no error to the prejudice of plaintiff in error, and the judgment of the circuit court is affirmed.

*Affirmed.*